UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CARRINGTON DAVIDSON,

    Petitioner,

vs.

DAVID DAVEY, Warden,

    Respondent.

No. 2:16-cv-00689 GEB GGH

FINDINGS AND RECOMMENDATIONS

*Introduction and Summary*

Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. section 2241.  ECF No. 1.  However, state prisoners must utilize section 2254 to challenge their convictions, White v. Lambert, 370 F.3d 1002-1005-06 (9th Cir. 2004), overruled on other grounds Haywood v. Marshall, 603 F.3d 546 (9th Cir. 2010)[1], and the court will treat the petition as such.

Petitioner was tried, convicted and sentenced by the Sacramento County Superior Court for attempted murder, assault with a firearm, first degree burglary of a residence, felon in possession of a firearm, willful discharging a firearm at an inhabited dwelling house, and discharging a firearm in a grossly negligent manner.  Lodged Document (Lod. Doc) No. 4 at 1-2.[2]

---

[1] Haywood itself was reversed by the Supreme Court on grounds not pertinent here.
[2] Lodged Documents are those filed by the Respondent in connection with this to which the court

1

The last conviction was reversed on appeal as it duplicated the conviction on Count 5.

Petitioner challenges his conviction on five grounds, counting two for ineffective assistance of counsel. For the reasons that follow, the petition should be denied.

*Issues*

The issues here are divided by what petitioner contends went wrong at his preliminary hearing, and two trial errors. As will be discussed, the alleged errors occurring at preliminary hearing are simply not actionable regardless of their merit. Thus, the undersigned will rearrange the issues set forth in the petition as follows: Petitioner seeks relief on the grounds that: (1) the prosecution committed a violation of Brady v. Maryland, 373 U.S. 83, 87 (1963), when it failed voluntarily to produce the interview notes of the police officer who testified at petitioner's preliminary hearing; (2) ineffective assistance of counsel in (a) failing to call and or confront a witness at the preliminary hearing, and (b) failing to challenge or to successfully challenge a police officer's testimony at preliminary hearing as being "unqualified under state law," i.e., qualification of the testifying police that would permit his testimony at preliminary hearing regarding the victim's hearsay statement pursuant to enactment of California Proposition 115; (3) petitioner was unconstitutionally disallowed admission (at trial) of the prior convictions of two witnesses for use as impeachment; and (4) that two of his convictions were on counts not included in the document giving petitioner notice of the charges against him.

*Factual Background*

As the Third District Court of Appeal summarized, the facts underlying the challenged conviction, found in Lodged Document 4 (see also People v. Davidson, 2015 WL 226133 (2015)), as follows.

*Prosecution Case*

> In July 2012, Tucker and her partner, Monica Carter, lived in an apartment complex off Mack Road in Sacramento. Tucker's cousin, Malika, also lived in the

---

takes judicial notice on its own motion since all of the documents so filed are drawn from the records of state courts rendering such notice appropriate under Federal Rule of Evidence 201(b)(2).

2

complex, directly above the apartment of Connie Vallejo.[3]

Early in July 2012 Tucker and her daughter were at Malika's apartment for a birthday party. Tucker's daughter mistakenly tried to enter Vallejo's apartment. Vallejo's five-or six-year-old granddaughter pushed Tucker's daughter out. Tucker, who saw the push, told Vallejo's granddaughter there was no need to do that. Vallejo came to the door and exchanged words with Tucker.

Two or three weeks later, Vallejo's daughter, Alisha Hunt, accused Tucker of putting her hands on Hunt's child and challenged Tucker to fight. They fought briefly. Afterward, Tucker thought the matter was over.

On July 24, 2012, Tucker, her friend Sparkle Johnson, and others were sitting outside Johnson's apartment in the complex. Hunt walked by them and went upstairs. Five or 10 minutes later, she came back with defendant, who wore a red baseball cap.

After Hunt said something to defendant, he asked Tucker if she had hit his daughter. Tucker, who did not know defendant or what he was talking about, said "No." They exchanged a few words; then defendant punched her in the face knocking her into a wall.[4]

Defendant pulled out a gun and started shooting at Tucker. She ran into Johnson's apartment, but he followed her there, put his gun hand through the front door, and continued to shoot as Tucker hid behind a table; Johnson's boyfriend, her four-year-old daughter, and another woman were also in the apartment. Hearing gunshots outside, Tucker realized defendant had left.

Carter was in the apartment she shared with Tucker when she heard the gunshots. She headed toward Johnson's apartment looking for Tucker. A Black man wearing a white T-shirt and a red cap moved quickly past her. He jumped into a car driven by Connie Vallejo, which sped away.

Police came to the complex and interviewed Tucker and Johnson. Based on what they were told, they then went to Vallejo's apartment, looking for her or Hunt. Vallejo was not home. The police found Hunt trying to jump over the back fence.

---

[3] [footnote in opinion] Defendant testified that Vallejo's daughter, Alisha Hunt, was the mother of defendant's children, and that Vallejo had custody of the children.
[4] [footnote in opinion] Tucker believed defendant thought she was a boy because of how she was dressed. She and others there told him she was female.

3

The police found a shell casing inside the front door of Johnson's apartment and three others on the walkway leading to it. They also found a bullet hole inside the apartment.

Calls made from defendant's cell phone shortly after the incident showed that the phone traveled from the Mack Road area toward downtown Sacramento. At 6:06 p.m., a call was made using a cell tower on J Street.

An Amtrak surveillance video showed defendant at the downtown train station at 6:11 p.m. A ticket for a 6:15 p.m. train to Richmond was purchased in his name.

Tucker and Johnson identified defendant in a photo lineup as the shooter.

*Defense Case*

Defendant, the only defense witness, testified that he came from his home in Oakland to Sacramento by train on July 24, 2012, to visit his daughters and take them to the state fair. Vallejo's niece drove them all there. Vallejo picked them up at the fair between 4:00 and 5:00 p.m. and took them back to her apartment, then drove defendant to the train station.

Defendant claimed he did not know Tucker, although he had seen her in the apartment complex on prior visits. He had never heard that she hit his daughter. He had heard from Vallejo that Tucker and Hunt had had a fight, but he did not learn what it was about and thought it was settled. No one asked him to come to the complex and resolve anything. He did not speak to Tucker on July 24, 2012. He did not have a gun. He did not hit or shoot anyone.

Defendant initially told the detective who interviewed him that he did not come to Sacramento in July 2012 because he thought the detective was questioning him about Vallejo or Hunt getting hurt in a shooting and he feared he might be blamed for it. Eventually, the detective told defendant that he could be placed in Sacramento on the date of the crime by evidence from cell towers, GPS, cameras in the apartment complex and the Amtrak station, and eyewitnesses; the detective also showed him the photo lineup and said someone had circled his picture. However, defendant never told the detective that he committed any crime.

Defendant had two prior convictions for crimes involving moral turpitude.

////

4

*Procedural History*

Petitioner was convicted on July 5, 2011, and judgment was entered on November 11, 2011. Lod. Doc (unnumbered) Augmented Clerk's Transcript on Appeal at 4. He filed a notice of appeal with the Third District Court of Appeal on October 4, 2013. Lod. Doc. (Unnumbered) Clerk's Transcript on Appeal at 247. That appeal was denied in an unpublished opinion on January 16, 2015, rejecting his claims that the court erred in failing to allow introduction of Tucker's prior felony conviction thereby violating his constitutional right to confrontation, and that his attorney was ineffective for his failure to object effectively, Lod. Doc. No. 4. The court reversed the Count 6 conviction as duplicative, and it remanded for correction of sentencing. Id. at 3-4.

Petitioner filed his petition for habeas corpus with the California Supreme Court on November 30, 2015, Lod. Doc. 5, and it was denied without opinion on March 9, 2016. Lod. Doc. No. 6. In this pleading he raised ineffective assistance of counsel for failing to demand witnesses at his preliminary hearing, failing to challenge the testimony of the sole prosecution witness, officer DeLeon, for non-qualification under California Proposition 115, that the prosecution's failure to disclose notes of interviews taken by officer DeLeon constituted a violation of the holding in Brady v. Maryland, 373 U.S. 83 (1963). He also sought habeas relief on the ground that he was convicted of 2 Counts not raised in the felony complaint filed against him. Id.

Respondent does not contend that the issues herein are unexhausted.

*Discussion*

A.  *Non-Structural Errors Committed at Preliminary Hearing Are Not Actionable*

Title 28 U.S.C. 2254 permits a habeas action for state prisoners "in custody pursuant to the judgment of a State court . . ." Thus, with infrequent exceptions, e.g., structural error in the way a grand jury is comprised, no attorney at preliminary hearing, double jeopardy, a state habeas petitioner may challenge only the alleged errors taking place at the conviction and sentencing phases of his trial. Of course, errors at trial may include previous unlawful actions which impact the evidence to be introduced or the fairness of the trial.

> It is well settled that deprivations of constitutional rights that occur before trial are no bar to conviction unless there has been an impact upon the trial itself. [footnote omitted] A conviction after trial, like a guilty plea, "represents a break in the chain of events which has preceded it in the criminal process." Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235. See United States v. Blue, 384 U.S. 251, 255, 86 S.Ct. 1416, 1419, 16 L.Ed.2d 510; *cf.* Stroble v. California, 343 U.S. 181, 197, 72 S.Ct. 599, 607, 96 L.Ed. 872 ("illegal acts of state officials prior to trial are relevant only as they bear on petitioner's contention that he has been deprived of a fair trial").

Rose v. Mitchell, 443 U.S.545, 576 (1979) (Stewart, concurring)

Thus unlawful irregularities in the arrest *per se*, for example, do not bar a later conviction. See Gerstein v. Pugh, 420 U.S. 103, 119 (1975). Moreover, although one has a federal constitutional right to trial, there is no constitutional right to a preliminary hearing. Howard v. Cupp, 747 F.2d 510 (1984). If the total absence of a preliminary hearing does not raise constitutional concerns, neither do ordinary "trial" errors occurring within the proceeding. See Palmer v. Mitchell, 2010 WL 2178851 *26 (C.D. Cal. 2010) (no ineffective assistance of counsel actionable for errors occurring in pretrial proceedings. Indeed, when one is indicted by a grand jury, none of the rights petitioner contends exist for preliminary hearing -- Brady disclosures at the hearing, right to call witnesses and confrontations of witnesses called -- exist at all.

Turning to petitioner's preliminary hearing contentions, he contends that the officer's review of his "notes," concerning the police report which was indisputably available, somehow constituted a violation of Brady v. Maryland, because the prosecution should have voluntarily disclosed such notes at that time. The asserted Brady failure of the prosecution to turn over the police officer's notes during the preliminary hearing, assuming arguendo that the notes were different from the police officer report which was available at the hearing, and that the notes contained some material exculpatory evidence, fails because petitioner alleges no impact of this "failure" on the conduct of his trial. He does not allege that the notes were unavailable at a meaningful time before trial, nor does he allege by specific showing that the notes had any exculpatory, material information which could have been used at trial.[5] He simply asserts that

---
[5] Of course, the *sine qua non* any Brady v. Maryland, violation is that the information withheld, was material to guilt and was exculpatory (or of value in impeachment). Even if the alleged

6

because this alleged error existed during the preliminary hearing, he is entitled to relief from his later trial conviction.[6]

Next, petitioner filters two further claims of error at the preliminary hearing through the rubric of ineffective assistance of counsel: (1) his counsel did not call Shamira Tucker, and hence counsel was unable to confront this witness; and (2) the police officer's qualification to testify concerning the witness statement should have been challenged. The impact of these asserted errors at trial is the sum of zero. There is no allegation that witness Tucker could not have been called or cross-examined at trial; indeed, she testified at trial. There is no evidence that the asserted state law error in testimonial qualifications was repeated at trial (or even existed at the preliminary hearing).[7] The allegations here exemplify why asserted, ordinary "trial" errors at

---

Brady violation at preliminary hearing was actionable, we do not know to this day whether extra-report notes existed, or what these notes contained. Petitioner has never produced them or given other evidence to this effect.

[6] In any event, significant is the fact that petitioner's counsel apparently had a copy of Officer DeLeon's report, when he cross-examined him at trial. On page 42 of the Reporter's transcript, counsel shows the Officer a portion of his written report and the following colloquy ensues:
> Q. I'm going to show you a few pages. They're probably out of order from the order that you have, but would this look familiar as part of your report?
> A. Yes and no.
> Q. Yes and no. Okay. Explain if you will.
> A. Yes, this is how – when we print up our reports we don't see this side of it. This is more the data that gets printed up.
> Q. Got it.

Succeeding pages of the transcript reveal an extensive discussion of elements of the officer's report which makes it clear that counsel had a copy of that report before he cross-examined him. There does not appear to be any reason why notes from which the report was made, if indeed that is the case, contained any exculpatory material.

[7] Petitioner's "qualification" claim relates to Officer DeLeon's testifying with regard to the statement made by the victim in this case, Shamira Tucker ["Tucker"]. In this regard, California Proposition 115, which was passed in a referendum and codified as California Penal Code section 872 provides:
> (a) If, however, it appears from the examination that a public offense has been committed, and there is sufficient cause to believe that the defendant is guilty, the magistrate shall make or indorse on the complaint an order, signed by him or her, to the following effect: "It appearing to me that the offense in the within complaint mentioned (or any offense, according to the fact, stating generally the nature thereof), has been committed, and that there is sufficient cause to believe that the within named A.B. is guilty, I order that he or she be held to answer to the same."

preliminary hearing are not actionable.

B. *The Two Asserted Trial Errors—Failure to Allow Impeachment and Conviction on Counts Not Alleged*

Before turning to the two asserted trial errors, the standards applicable to review of those issues are set forth below.

*AEDPA Standards*

The statutory limitations of federal courts' power to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The text of § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

> (b) Notwithstanding Section 1200 of the Evidence Code, the finding of probable cause may be based in whole or in part upon the sworn testimony of a law enforcement officer or honorably retired law enforcement officer relating the statements of declarants made out of court offered for the truth of the matter asserted. An honorably retired law enforcement officer may only relate statements of declarants made out of court and offered for the truth of the matter asserted that were made when the honorably retired officer was an active law enforcement officer. Any law enforcement officer or honorably retired law enforcement officer testifying as to hearsay statements shall either have five years of law enforcement experience or have completed a training course certified by the Commission on Peace Officer Standards and Training that includes training in the investigation and reporting of cases and testifying at preliminary hearings.

> (c) For purposes of subdivision (b), a law enforcement officer is any officer or agent employed by a federal, state, or local government agency to whom all of the following apply:

> (1) Has either five years of law enforcement experience or who has completed a training course certified by the Commission on Peace Officer Standards and Training that includes training in the investigation and reporting of cases and testifying at preliminary hearings.

> (2) Whose primary responsibility is the enforcement of any law, the detection and apprehension of persons who have violated any law, or the investigation and preparation for prosecution of cases involving violation of laws.

The second question asked of the officer at preliminary hearing revealed he had seven years of police officer service. CT 26. The factual basis for petitioner's claim is devoid of merit.

8

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), clearly established federal law consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir.2013) citing Greene v. Fisher, 565 U.S. 34,35-36 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir.2011) citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000). Circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, ___ U.S. ___, ___, 133 S.Ct. 1446, 1450 (2013) citing Parker v. Matthews, 567 U.S. 37, 48 (2012). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id.

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir.2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 412. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

9

'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103.

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir.2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir.2007) (en banc).

"[Section] 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Harrington, 562 U.S. at 100. Rather, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. at 99-100. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 785 *citing* Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, 133 S.Ct. 1088, 1091 (2013).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir.2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir.2003). Here, the presumption of regularity in the Supreme Court's decision without opinion applies.

The state courts need not have cited to federal authority, or even have indicated awareness

of federal authority in arriving at their decisions. Early v. Packer, 537 U.S. 3, 8 (2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.2003): "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Harrington, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir.2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Harrington, 562 U.S. at 98. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 101. "Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Id. Emphasizing the stringency of this standard, which "stops short of imposing a complete bar of federal court relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has cautioned that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) quoting Harrington, 562 U.S. at 98.

As this court has recently noted,

> Under § 2254(d)(2) factual findings of the state courts are presumed to be correct subject only to a review of the record which demonstrates that the factual

11

finding(s) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." It makes no sense to interpret "unreasonable" in § 2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1)—i.e., the factual error must be so apparent that "fairminded jurists" examining the same record could not abide by the state court factual determination. A petitioner must show clearly and convincingly that the factual determination is unreasonable. See Rice v. Collins, 546 U.S. 333, 338 (2006).

The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19 (2002). Specifically, the petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, supra, at 102. "Clearly established" law is law that has been "squarely addressed" by the United States Supreme Court. Wright v. Van Patten, 552 U.S. 120, 125 (2008). Thus, extrapolations of settled law to unique situations will not qualify as clearly established. See e.g., Carey v. Musladin, 549 U.S. 70, 76 (2006) (established law not permitting state sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear prison clothing or by an unnecessary showing of uniformed guards does not qualify as clearly established law when spectators' conduct is the alleged cause of bias injection). The established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. 3, 9 (2002).

Johnson v. McDowell, 2017 WL 1166135 at 3-4 (E.D.Cal. 2017).

The grounds asserted for relief in the subject petition are individually analyzed below.

1. <u>The Trial Court Improperly Excluded Impeachment Evidence</u>

Petitioner argues that the trial court's refusal to permit use of prior bad acts by two of the witnesses against him was sufficiently prejudicial to require granting of the writ. Victim and witness Shamira Tucker had been arrested for violation of Cal. Penal Code 245, assault with a deadly weapon, when she was a juvenile with no conviction, and was subject to a juvenile adjudication and probation seven years before the incident. CT 96. Witness Sparkle Johnson was convicted of misdemeanor check fraud in 2005, eight years before the incident herein. CT 97.

12

The prosecution sought to exclude both of the foregoing due to the time lapse between the acts, and under California Evidence Code section 352 on the ground that use of these facts would be more prejudicial than probative.

The court ultimately gave petitioner permission to ask Ms. Johnson if she had been involved in a misdemeanor check fraud matter in 2005 and nothing more. RT 79:12-80:5. The court excluded any evidence of Ms. Tucker's juvenile action, however, based on her age at commission, the 7 years that intervened, the fact that she had no other offenses, and introduction would be more prejudicial than probative. RT 87:13-28.

The Court of Appeal ruled upon the Tucker exclusion:

> As the trial court found, Tucker's juvenile adjudication was not recent and was not followed by any adult offense; thus it had little probative value as to her credibility. (See Lightsey, *supra*, 54 Cal.4th at p. 714; People v. Feaster (2002) 102 Cal.App.4th 1084, 1094.) The court could reasonably determine that the small probative value of this evidence was outweighed by its potential to waste time, create confusion, and prejudice the jury unfairly against Tucker. This finding was well within the court's discretion.
>
> But even if the evidence should have been admitted, its exclusion was harmless. Tucker's story was corroborated by other evidence, including Johnson's eyewitness identification of defendant. But the parts of defendant's story that pointed to his innocence were uncorroborated. He admitted two convictions for crimes involving moral turpitude. He also admitted lying to the police about not going to Sacramento in July 2012 until confronted with proof that he had done so. In light of that evidence, impeachment of Tucker for an eight-year-old juvenile assault would have had no reasonable likelihood of producing a more favorable outcome for defendant.
>
> Defendant's assertion that the trial court's ruling violated his federal constitutional right to confrontation is baseless. Application of the ordinary rules of evidence does not generally infringe impermissibly on a defendant's constitutional rights. (People v. Cudjo (1993) 6 Cal.4th 585, 610–611.) In any event, defense counsel's comprehensive cross-examination of Tucker on every aspect of the case consumes over 60 pages of reporter's transcript. (RT 139–200) Defendant was not deprived of the right to confront Tucker. Therefore, regarding defendant's claim of ineffective assistance of counsel, the claim lacks merit because defendant has not shown that his counsel was deficient.

Davis v. Alaska (1974) 415 U.S. 308 [39 L.Ed.2d 347], which defendant improperly cites only in his reply brief, is inapposite. The Supreme Court held there that the defendant's right to confrontation was impaired because he was not allowed to show that a witness's present vulnerable status as a juvenile probationer might cause bias and motivate him to identify the defendant falsely. (Id. at pp. 315–320.) Tucker's long-past juvenile adjudication did not put her in a vulnerable position or create any grounds for bias against defendant.

People v. Davidson, 2015 WL 226133 at * 4

The Supreme Court case that initially speaks to the issue here is, of course, the Davis v. Alaska case cited by the Court of Appeal. However, this is not the only Supreme Court case on the issue, and Davis does not stand for the proposition that a trial court may impose no limits on proffered impeachment evidence.

> Normally the right to confront one's accusers is satisfied if defense counsel receives wide latitude at trial to question witnesses. Delaware v. Fensterer, 474 U.S., at 20, 106 S.Ct., at 294. In short, the Confrontation Clause only guarantees "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Id., at 20, 106 S.Ct., at 294 (emphasis in original)

Pennsylvania v. Ritchie, 480 U.S. 39, 53 (1984). See also Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986) (emphasizing that trial judges have "wide latitude" in determining the probative value versus prejudice and confusion of issues when ruling upon the admissibility of impeachment evidence.

In support of his claim of prejudice from these rulings, petitioner cites three cases from the Ninth Circuit Court of Appeals. Thomas v. Hubbard, 273 F.3d 1164, 1178 (9th Cir. 2001), found that "where a defendant's guilt largely hinges on the testimony of a prosecution's witness, the erroneous exclusion of evidence critical to assessing the credibility of that witness violates the Constitution. McKinney v. Rees, 993 F.2d 1378 (9th Cir. 1993) is a case involving "other act" evidence—an issue not raised in the present habeas petition. Batchelor v. Cupp, 593 F.2d 859, 864-864 (1982), was a civil action of little relevance here.

The standard here is one of AEDPA unreasonableness, not what the "correct" answer is. The trial court and Court of Appeal found that Tucker's old juvenile conviction did not do much

14

to impact witness Tucker's credibility due to its age and likelihood to cause confusion of the issues. Admission of the dated juvenile conviction might also unduly prejudice the jury against the witness. Nor did the conviction directly affect credibility, *i.e*., it does not bear on honesty per se. This determination cannot be said to be one that fair minded jurists could not make given that trial judges have "wide latitude" to determine whether exclusion is appropriate. This court need not make any further analysis of the harmfulness of the error based on an "even if" analysis.

The second impeachment evidence at issue (not ruled upon by the Court of Appeal) involved the misdemeanor check fraud conviction of witness Johnson. The jury did not need to know the precise facts of this 8 year old misdemeanor check fraud; the jury was fully apprised of its potential impeachment value by obvious general facts surrounding such convictions, i.e, one cashed a check knowing that there were not sufficient funds to draw upon, or that a false check was tendered. Petitioner's jury heard that she had suffered from such a conviction, and could easily draw its own impeachment conclusions without all the details of the conviction. Reasonable jurists could certainly agree with the trial court, and the California Supreme Court on state habeas, that exclusion of the facts of the dated conviction did not unduly hamper cross-examination.

        2.        Conviction on Uncharged Counts.

Petitioner points out that the complaint which brought him into court charged four counts, but the jury ultimately convicted him of 6 counts.[8] Id. He argues that this is the product of a "constructive amendment" which requires a grant of his petition. ECF No. 1 at 13.

It is beyond doubt that petitioner is entitled to meaningful notice of the charges to which he will defend at trial:

> No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal.

Cole v. State of Arkansas, 333 U.S. 196, 201 (1948).

---

[8] The appellate court ultimately reversed the conviction on Count 6 as being duplicative of Count 5.

15

However, petitioner had such notice. The original complaint charged petitioner with only 4 counts: (1) attempted murder with malice; (2) assault with a firearm; (3) residential burglary; and (4) felon in possession and one prior conviction. Clerk's Transcript ["CT"] 10-15. At a hearing on August 9, 2012, the prosecution filed an Amended Complaint that added three additional prior convictions and it was deemed to be the ongoing Information. CT at 16. At preliminary hearing on November 27, 2012, the court found probable cause to hold petitioner to answer for what would be Counts Five and Six regarding a willful and negligent discharge of a firearm. CT 56-57; defense counsel waived full reading, not guilty pleas were entered. CT 58. On December 21, 2012, the prosecution filed an Amended Information which again referenced the two Counts for which probable cause had been found: Count 5 for willful discharge of a firearm at an inhabited dwelling and Count 6 for grossly negligent discharge of a firearm, and added another prior conviction. CT 61-67. During a hearing on pretrial motions held January 4, 2013,[9] the prosecution gave oral notice of its intent to amend the information and requested to continue the courts consideration until the trial readiness conference at the time scheduled for January 10, 2014-- and the defense counsel waived objection. RT 3:12-16. One further amendment to the now well amended Information was made on May 30, 2013; formal arraignment was waived and not guilty pleas were entered. CT 102-108. Thus the record seems to make clear that defendant and his counsel were fully apprised of the firearm discharge charges to be tried well before the trial ensued, and agreed to proceed without objection.

Finally, the jury convicted petitioner of the 6 counts listed above as part of the Amended Complaint, Information, on verdict forms of which both petitioner and his attorney had notice. CT 181-186. No issue of "surprise" was made at the time.

Thus, petitioner's constructive amendment argument is meritless.

////

////

---

[9] The page of the Reporter's transcript regarding this hearing is dated at the top October 4, 2013 but the Index dates it to having been held January 4, 2013. Given the other dates on sequential documents in the file the October date would appear to be a typographical or clerical error.

16

*Conclusion*

Accordingly, IT IS THEREFORE FOUND AND RECOMMENDED that:

1. Petitioner's writ should be denied;
2. No Certificate of Appealability should be issued; and
3. The Clerk of the Court should be directed to close this case.

This Findings and Recommendations is submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendations, the parties may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The petitioner is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir.1991).

Dated: July 11, 2017

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE